1

2

3

4                   UNITED STATES DISTRICT COURT

5                   EASTERN DISTRICT OF CALIFORNIA

6

7   MAURO ALEJANDRO III,              1:06-CV-00449-OWW-GSA

8                 Plaintiff,

9        v.                           MEMORANDUM DECISION AND ORDER
                                      RE GRANTING DEFENDANTS MOTION
10  BAKERSFIELD POLICE OFFICER        FOR SUMMARY JUDGMENT (Doc. 64
    JASON WILLIAMSON #876;            and 65)
11  BAKERSFIELD POLICE OFFICER
    AARON STRINGER #973;
12  CALIFORNIA HIGHWAY PATROL
    OFFICER ASHE # 16947,
13  CALIFORNIA HIGHWAY PATROL
    OFFICER FALLAS #14770,
14
                  Defendants.
15

16

17       Defendants have filed two motions for summary judgment.

18  Oral argument was heard on Monday, April 28, 2008.  Defendants

19  Matt Ashe and Dan Fallas, CHP officers, filed a motion for

20  summary judgment on March 11, 2008. (Doc. 65, CHP Motion for

21  Summary Judgment)  Defendants Jason Williamson and Aaron

22  Stringer, Bakersfield Police Officers, filed a motion for summary

23  judgment on March 11, 2008. (Doc. 64, Bakersfield Motion for

24  Summary Judgment)  Plaintiff Mauro Alejandro (Pro Se) has failed

25  to file any opposition to either Motion for Summary Judgment.

26  Opposition papers were due on April 14, 2008. *See* E.D.Cal. Local

27  Rule 78-230(c).  Plaintiff failed to appear at oral argument on

28  April 28, 2008.  Both set of Defendants, Bakersfield Police

                                1

1  Officers and CHP Officers, have filed a notice of Plaintiff's

2  failure to oppose their Motions for Summary Judgment. (Doc. 70,

3  filed April 21, 2008 and Doc. 71, filed April 22, 2008)

4       Plaintiff Alejandro filed a complaint almost two years ago

5  on April 18, 2006. (Doc. 1)  Plaintiff filed a first amended

6  complaint on May 18, 2006 (after Plaintiff's initial complaint

7  was dismissed with leave to amend by the Court for failure to

8  satisfy Fed. R. Civ. Proc. 8(a)(2) requirements). (Doc. 8, First

9  Amended Complaint, and Doc. 7, Order)  Plaintiff then filed a

10 Second Amended Complaint on December 27, 2006, after Defendants

11 motion to dismiss was granted.  (Doc. 40, Complaint and Doc. 38,

12 Order re: Motion to Dismiss)

13      Plaintiff's Complaint alleges causes of action for § 1983

14 excessive force and unreasonable search and seizure under the

15 Fourth and Fourteenth Amendments from incidents involving a high

16 speed police chase by car and foot and the subsequent arrest

17 which involved the use of force in the early morning hours of

18 November 20, 2005 in Bakersfield, California.  (Doc. 40,

19 Complaint)  Plaintiff claims all officers used excessive force by

20 beating Plaintiff with their batons while Plaintiff was visibly

21 flat on the floor, unresisting in a spread eagle position,

22 eventually moving to a fetal position, while pleading for mercy.

23 Plaintiff claims he suffered as a result of the excessive force

24 numerous fractures, cuts, abrasions, injuries to entire body,

25 including his head, a broken hand and elbow.  Plaintiff claims as

26 a result he required surgery.  Plaintiff also alleges state law

27 claims for assault and battery, abuse of process, intentional

28 infliction of emotional distress, fraud, deceit, bad faith,

misconduct and excessive force.[1] (*Id.*)  Plaintiff's Complaint is brought against Defendants Officers, in their individual capacities, who were involved in the chase and arrest involving use of force: Defendants Bakersfield Police Office Jason Williamson #876, Bakersfield Police Officer Aaron Stringer #973, California Highway Patrol Officer Matt Ashe #16947, California Highway Patrol Officer Dan Fallas # 14770.

Defendants Bakersfield Police Officers Jason Williamson's and Aaron Stringer's Statements of Undisputed Facts as provided in their summary judgment motion are as follows (Doc. 64-3, Defendant Bakersfield Police Officers Jason Williamson and Aaron Stringer Statement of Undisputed Material Facts, "BSUF"):

BSUF 1. On November 19, 2005, the vehicle belonging to Maxcine Cole was stolen from her driveway.  The vehicle was a GMC Envoy.

BSUF 2. Jason Williamson is a police officer with the Bakersfield Police Department.

BSUF 3. Aaron Stringer is a police officer with the Bakersfield Police Department.

BSUF 4. On November 20, 2005, Defendants Williamson and Stringer were driving in a marked Bakersfield Police Department vehicle and were in full uniform.

BSUF 5. Alejandro does not remember what he had been doing that day of the incident, does not know if he had consumed any drugs within 24 hours of the incident but if he had, it would have been methamphetamine.

BSUF 6. Defendant Williamson and Stringer initially saw Plaintiff in a vehicle exiting a parking lot.  Officer Williamson observed Plaintiff look nervously from side to side.  Officer Williamson made a u-turn and observed Plaintiff fail to come to a complete stop behind the limit line at a red light.  Alejandro admits that he was a suspect

---

[1] The viability and availability of the following state law claims of actions are merely stated for purposes of informing of the claims asserted by Plaintiff.

to an alleged crime committed on November 20, 2005.

BSUF 7. The last thing that Alejandro remembers before the incident took place was being at a stoplight at Olive and Knudsen streets.  He does not remember where he was going.

BSUF 8. Officer Williamson activated the police vehicle's overhead emergency lights.  Plaintiff sped up.  Officer Williamson activated the police vehicle's sirens and Officer Stringer communicated via radio that they were in pursuit.

BSUF 9. Alejandro saw the police officers following him but was trying to drive away from them because he had outstanding warrants.

BSUF 10. Alejandro continued to lead the police in a high speed chase.  During the course of the pursuit, not only did Alejandro fail to stop at red lights and failed to brake prior to entering intersections, but he also crossed over a cement barrier and drove his vehicle westbound in eastbound lanes.  The police chase lasted between 10-15 minutes. Alejandro only stopped because he had a flat tire.

BSUF 11. Officer Stringer used his radio to advise that Alejandro was attempting to ram (assault) their police vehicle.

BSUF 12. Alejandro abandoned the vehicle and began fleeing on foot.  He ran across a front yard into the backyard of that residence.  Alejandro then jumped over the fence. Officer Stringer went in foot pursuit.  Officer Williamson ran northbound in the north/south alley to the west of the residence and then eastbound in the north alley of the Olive Drive behind the residence.

BSUF 13.  After a prolonged chase and after Alejandro jumped over the fence, he landed in an alley where Defendant Williamson was located.  Officer Williamson was somewhere between 15-20 feet away from him.  Alejandro heard the police officers yelling at him to stop.  Alejandro saw the weapon pulled and also saw the police officer holster the gun.  Other than Officer Williamson, he did not see any of the other police officers arrive.

BSUF 14. Williamson placed his gun back in the holster as he approached Alejandro.

BSUF 15. Alejandro did not see the other police officers hit him, he just assumed it was not just one baton.  He does not know which officers hit him.  He does not know if Officer Stringer hit him.

BSUF 16. Alejandro did not have any identification on his person when he was arrested and the police officers did not know about his prior arrest history when they pulled

4

Alejandro over.  However, Alejandro did have a screwdriver, a knife, and methamphetamine in his pocket.  The vehicle he was driving had multiple stolen items including multiple burglary tools, stolen checks, stolen chrome wheels, and a stolen credit card.

BSUF 17. Officer Williamson could not secure the plaintiff by himself.

BSUF 18. Medical attention was immediately summoned for Alejandro.  Alejandro was taken to Kern Medical Center wherein he was diagnosed with fractures to his hand and elbow.

BSUF 19. Alejandro was charged with (1) felony evading, (2) possession of a stolen gun, (3) grand theft auto, (4) possession of burglary tools, (5) possession of methamphetamine, (6) resisting arrests, (7) stop sign violation, (8) red light violation, (9) excess speed of 100 mph, (10) driving on the wrong side of the divided highway. Alejandro pled no contest to possession of a stolen vehicle, evading arrest, and possession of methamphetamine. Alejandro was in custody from the date of the incident to August 29, 2007.  He was then released to the Kennemer Center in Bakersfield which is a sober living home.  He is to stay at Kennemer for not less than three months.

BSUF 21. Alejandro cannot recall if he had ever been arrested by the Bakersfield Police Department but had never had contact with Officers Williamson or Stringer before the date of this incident.

BSUF 23. Alejandro knew that the Fourteenth Amendment applies to people already in custody.

BSUF 24.  Alejandro tested positive for methamphetamine from Kern Medical Center.

Defendants CHP Officers Dan Fallas' and Matt Ashe's

Statement of Undisputed Facts as provided in their motion for

summary judgment are as follows (Doc. 67, Defendant CHP Police

Officers Dan Fallas and Matt Ashe Statement of Undisputed

Material Facts, "CSUF"):

CSUF 1. Officers Dan Fallas and Matt Ashe are both employed as officers by the California Highway Patrol (CHP) and were so employed on the date of the incident in question, November 20, 2005.

CSUF 2. On November 20, 2005, Officers Fallas and Ashe were on patrol in the area of Olive Drive and SR 99, in the

5

Bakersfield area, when they overheard on their scanner that the Bakersfield Police Department was in pursuit of a vehicle.

CSUF 3. Officers Fallas and Ashe responded to the area of the pursuit and observed Plaintiff's vehicle running up on the sidewalk and Plaintiff exiting and fleeing northbound through the neighborhood.

CSUF 4. Officers Fallas and Ashe witnessed Officer Williamson of the Bakersfield Police Department in a physical confrontation with Plaintiff in an alley approximately 50 yards from where they were located.

CSUF 5. Officers Fallas and Ashe ran to Officer Williamson's location and observed Plaintiff on his back on the ground kicking and punching towards Officer Williamson.

CSUF 6. Plaintiff was not complying with Officer Williamson's command to turn onto his stomach and put his hands to his side.

CSUF 7. Officer Williamson was unable to get Plaintiff under control to take him into custody.

CSUF 8. Officers Fallas and Ashe were giving verbal commands to Plaintiff to stop resisting and to turn onto his stomach during the entire time they were at the scene.

CSUF 9. Because Plaintiff refused to cooperate, Officers then utilized their Armament Systems and Procedures (ASPs) in order to assist Officer Williamson in controlling Plaintiff.  Officer Ashe struck Plaintiff twice on the left elbow and Officer Fallas struck Plaintiff once across his back.

CSUF 10. Officers Williamson and Fallas were then able to control Plaintiff and facilitate his handcuffing.

CSUF 11. All actions undertaken by Officers Fallas and Ashe were in conformity with and consistent with the CHP guidelines.

CSUF 12. At all times, Officers Fallas and Ashe complied with the standards set forth in the CHP Officer Safety Manual regarding the use of force.

CSUF 13. Officers Fallas' and Ashe's conduct was reasonable in light of the force used by Plaintiff and his actions which placed the officers involved in a dangerous situation.

A.    Standard of Review

Summary judgment is warranted only "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998). Therefore, to defeat a motion for summary judgment, the non-moving party must show (1) that a genuine factual issue exists and (2) that this factual issue is material. *Id.*  A genuine issue of fact exists when the non-moving party produces evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252-56 (1986). Facts are "material" if they "might affect the outcome of the suit under the governing law." *Campbell*, 138 F.3d at 782 (quoting *Anderson*, 477 U.S. at 248).

The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The more implausible the claim or defense asserted by the nonmoving party, the more persuasive its evidence must be to avoid summary judgment. *See United States ex rel. Anderson v. N. Telecom, Inc.*,

**52 F.3d 810, 815 (9th Cir. 1995). Nevertheless, the evidence**

**must be viewed in a light most favorable to the nonmoving party.**

***Id.; Anderson*, 477 U.S. at 255.**

**B.    Failure of Plaintiff to File Opposition**

**Local Rule 83-183 requires pro se parties to comply with the**

**Federal Rules of Civil Procedure and Local Rules.**

> **Rule 83-183 Persons Appearing in Propria Persona**
> **(a) Rules Governing Appearance. Any individual who is**
> **representing himself or herself without an attorney**
> **must appear personally or by courtesy appearance by an**
> **attorney admitted to the Bar of this Court and may not**
> **delegate that duty to any other individual, including**
> **husband or wife, or any other party on the same side**
> **appearing without an attorney. Any individual**
> **representing himself or herself without an attorney is**
> **bound by the Federal Rules of Civil or Criminal**
> **Procedure and by these Local Rules. All obligations**
> **placed on "counsel" by these Local Rules apply to**
> **individuals appearing in propria persona. Failure to**
> **comply therewith may be ground for dismissal, judgment**
> **by default, or any other sanction appropriate under**
> **these Rules. A corporation or other entity may appear**
> **only by an attorney.**

**E.D. Cal. Local Rule 83-183(a).  Oppositions, if any to**

**Defendants' Motions for Summary Judgment were due (14) fourteen**

**days prior to the scheduled hearing date of April 28, 2008.**

**Therefore, oppositions were due on April 14, 2008.**

> **Opposition, if any, to the granting of the motion shall**
> **be in writing and shall be filed with the Clerk not**
> **less than fourteen (14) days preceding the noticed (or**
> **continued) hearing date.**

**E.D. Local Rule 78-230(c).  Plaintiff has failed to provide any**

**opposition papers in this case, therefore Plaintiff is not**

**entitled, under the Local Rules, to be heard at oral argument in**

**opposition to Defendants' Motion for Summary Judgment.**

> **No party will be entitled to be heard in opposition to**
> **a motion at oral arguments if opposition to the motion**
> **has not been timely filed by that party. See L.R.**
> **5-135(a), 6-136(a).**

**8**

*Id.* Failure to appear may be deemed a withdrawal of opposition to the motions, in the discretion of the Court. E.D. Local Rule 78-230(j).

"If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2) (emphasis added). "The language of the rule [56(e)] is permissive, conferring discretion upon the district judge to determine whether non-compliance should be deemed consent to a given motion. That discretion, however, is necessarily abused when exercised to grant a motion for summary judgment where the movant's papers are insufficient to support that motion or on their face reveal a genuine issue of material fact." *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).

The Court on June 22, 2006 issued a Second Informational Order and Summary Judgment Notice in the suit detailing Plaintiff's obligations and requirements under the law if a summary judgment motion should be filed, including the possibility of a waiver if opposition to a summary judgment motion is not filed, and also the possibility of a default judgment being entered:

> 2. Unless otherwise ordered, all motions to dismiss, motions for summary judgment, motions concerning discovery, motions pursuant to F.R.Civ.P. 7, 11, 12, 15, 41, 55, 56, 59 and 60, and motions pursuant to this Court's Local Rule 11-110 shall be briefed pursuant to this Court's Local Rule 78-230(m). *Failure to oppose such a motion timely may be deemed a waiver of opposition to the motion.* Opposition to all other motions need be filed only as directed by the court.
> 3. At some point in the litigation, one or more defendants may seek summary judgment/adjudication as to some or all of plaintiff's claims. Pursuant to Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988), plaintiff

is advised of the following requirements to oppose a
motion for summary judgment/adjudication made by a
defendant pursuant to F.R.Civ.P. 56. Such a motion is a
request for an order for judgment in favor of defendant
without trial. The defendant's motion will set forth
the facts that defendant contends are not reasonably
subject to dispute and that entitle defendant to
judgment. To oppose the motion, plaintiff must show
proof of his or her claims. Plaintiff may do this in
one or more of the following ways: (1) plaintiff may
rely on statements made under the penalty of perjury in
the complaint if the complaint shows that plaintiff has
personal knowledge of the matters stated and plaintiff
calls to the court's attention those parts of the
complaint upon which plaintiff relies; (2) plaintiff
may also serve and file one or more affidavits or
declarations setting forth the facts that plaintiff
believes prove plaintiff's claims (the persons who sign
the affidavit or declaration must have personal
knowledge of the facts stated); (3) plaintiff may also
rely upon written records but plaintiff must prove that
the records are what plaintiff claims they are2; and
(4) plaintiff may also rely upon all or any part of the
transcript of one or more depositions, answers to
interrogatories, or admissions obtained in this
proceeding. *Should plaintiff fail to contradict
defendant's motion with affidavits, declarations or
other evidence, defendant's evidence will be taken as
truth, and final judgment may be entered without a full
trial. See F.R.Civ.P. 56(e).*
4. If there is some good reason why such facts are not
available to plaintiff when required to oppose
defendant's motion for summary judgment/adjudication,
the Court will consider a request to postpone
consideration of defendant's motion. See F.R.Civ.P.
56(f). *If plaintiff does not serve and file a request
to postpone consideration of defendant's motion or
written opposition to the motion, the Court may
consider the failure to act as a waiver of opposition
to defendant's motion. Plaintiff's waiver of opposition
to defendant's motion may result in the entry of
summary judgment against plaintiff.*
5. A motion supported by affidavits or declarations
that are unsigned will be stricken.
6. *The failure of any party to comply with this order*,
the Federal Rules of Civil Procedure, or the Local
Rules of Court, *may result in the imposition of
sanctions including, but not limited to, dismissal of
the action or entry of default.*

Doc. 15, Second Informational Order and Summary Judgment Notice,

¶¶ 2-6 (emphasis added).  The Court's First Informational Order,

dated April 21, 2006, also advised Plaintiff that "[f]ailure to

10

comply with the Local Rules, federal rules or a court order, including this order, will be grounds for dismissal or other appropriate sanctions. *See* Local Rule 11-110; F.R.Civ.P. 41(b)." (Doc. 4, First Informational Order, filed April 21, 2006). Plaintiff has further requested and been denied three times, appointment of counsel. (Doc. 26, Request for Appointment of Counsel, filed September 28, 2006 and Doc. 27, Order Denying Request for Counsel; Doc. 44, Request for Appointment of Counsel, filed February 12, 2007 and Doc. 45, Order Denying Request for Counsel; Doc. 56, Request for Appointment of Counsel, filed December 5, 2007 and Doc. 27, Order Denying Request for Counsel).

**B.   CLAIMS**

The following are standards and Defendants' arguments for each of the claims alleged by Plaintiff.

**I.   Fourth and Fourteenth Amendment Violations**

**a.   Fourth Amendment: Excessive Force**

"Section 1983 provides for liability against any person acting under color of law who deprives another 'of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003)(quoting 42 U.S.C. § 1983).   "The rights guaranteed by section 1983 are 'liberally and beneficently construed.'" *Id.* (*quoting Dennis v. Higgins*, 498 U.S. 439, 443 (1991)).   Pursuant to 42 U.S.C. § 1983, Plaintiff may bring a civil action for deprivation of rights under the following circumstances:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or

causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To establish personal liability in a § 1983 action, it is enough to show that the official, "acting under color of state law, caused the deprivation of a federal right." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal quotations omitted).  Public officials sued in their personal capacity may assert personal liability defenses, such as qualified immunity. *Dittman v. California*, 191 F.3d 1020, 1027 (9th Cir. 1999).  "Under the Fourth Amendment, police may use only such force as is objectively reasonable under the circumstances. [citation] Determining whether force used in making an arrest is excessive or reasonable 'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Cunningham v. Gates*, 229 F.3d 1271, 1288 (9th Cir. 2000) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)).  "[T]he fundamental premise that the use of force to effect an arrest is subject to the Fourth Amendment's prohibition on unreasonable seizures." *Chew v. Gates*, 27 F.3d 1432, 1440 (9th

12

1   Cir. 1994).

2                        **Qualified Immunity**

3          Defendants claim they are entitled to qualified immunity.

4   Deciding qualified immunity entails a two-step analysis.  First,

5   a court must ask whether a constitutional violation occurred at

6   all.  If the answer to this question is yes, the court must then

7   inquire whether the right violated was "clearly established" by

8   asking whether a reasonable officer could believe that the

9   defendant's actions were lawful. *See Saucier v. Katz*, 533 U.S.

10  194, 201 (2001).

11         The traditional summary judgment approach should be used in

12  analyzing the first step of the *Saucier* analysis:

13              A court required to rule upon the qualified immunity
                issue must consider, then, this threshold question:
14              Taken in the light most favorable to the party
                asserting the injury, do the facts alleged show the
15              officer's conduct violated a constitutional right?
                Where the facts are disputed, their resolution and
16              determinations of credibility are manifestly the
                province of a jury.
17

18  *Wall v. County of Orange*, 364 F.3d 1107, 1110-1111 (9th Cir.

19  2004) (internal citations and quotations omitted).  In the second

20  step, the court must ask whether it would be clear to a

21  reasonable officer that his conduct was unlawful in the situation

22  confronted.  Although this inquiry is primarily a legal one,

23  where the reasonableness of the officer's belief that his conduct

24  was lawful "depends on the resolution of disputed issues of

25  fact...summary judgment is not appropriate." *Wilkins v. City of*

26  *Oakland*, 350 F.3d 949, 956 (9th Cir. 2003) (*citing Saucier*, 533

27  U.S. at 216 (Ginsburg J., concurring)).

28         The qualified immunity analysis begins with whether the law

                                13

is "clearly established" such that a reasonable official could believe that his or her actions were lawful. *See Katz*, 533 U.S. at 194-195.  The inquiry is more particularized and thus more relevant than the general proposition that excessive use of force by an officer is contrary to the Fourth Amendment (under objective standards of reasonableness).  "[R]easonable mistakes can be made as to the legal constraints on particular police conduct." *Id.* at 205.

Defendants Williamson and Stringer, Bakersfield Police Officers, allege they used reasonable force under the circumstances.  They allege that as a result of Plaintiff's efforts to flee and use force, Defendants had no option but to inflict minimal force to gain control of Plaintiff.  Defendant Williamson struck Plaintiff three to four times on the arm. Defendant Stringer struck Plaintiff four times in the right leg. Defendant Williamson was able to hold Plaintiff's arm in an armbar hold.  Defendants had to shove Plaintiff to the ground in the process.  Neither Williamson nor Stringer struck Plaintiff in the head.  Once Plaintiff stopped trying to resist arrest and/or escape custody, neither Williamson nor Stringer struck Plaintiff.

Defendants claim that governmental interests were met in the use of force. *See Blanford v. Sacramento County*, 406 F.3d 1110, 1115 (9th Cir. 2005) ("Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865 (internal quotation marks

**14**

omitted).  This balancing test entails consideration of the totality of the facts and circumstances in the particular case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.")  In regards to the severity of the crime, Plaintiff failed to complete a stop at a red light.  After activating their lights Defendants Williamson and Stringer, chased Plaintiff after he fled from the officers, lasting 10-15 minutes, and involved Plaintiff crossing over median, running red lights, stop signs, driving over 100 mph and driving the wrong way down the street.  Plaintiff tried to ram the police vehicle.  After Plaintiff got a flat tire, he fled on foot, running through a yard and jumping over a fence.  The criminal offenses for which Plaintiff were charged was numerous.  Plaintiff was found with methamphetamine and burglary tools.

In regards to posing a threat, Plaintiff was driving at excessive speeds, violating numerous traffic laws, and posing a safety and welfare risk to bystanders and the officers themselves.  Plaintiff rammed a police vehicle and continued to flee on foot.  Plaintiff aggressively resisted arrest by punching and kicking the officers and rolling around while thrashing violently.  Officer Williamson was unable to handcuff Plaintiff without assistance.  Plaintiff posed an immediate threat of physical violence to the officers and others during this incident. Third, Plaintiff was actively trying to escape.

Defendant CHP officer Dan Fallas and Matt Ashe also argue in their motion for summary judgment:

15

> A review of the CHP Officer Safety Manual chapter on the use of force (attached to the declaration of Sue Tinsley and filed in conjunction herewith) indicates that an officer has the discretion to use force options when he feels they are necessary. In this case, Officers Williamson, Fallas and Ashe attempted to use the least intrusive means possible, i.e., verbal instructions and control holds, to contain Plaintiff (UMF Nos. 6 and 8.) Plaintiff initially used force upon Officer Williamson and resisted in such a manner as to cause a danger to himself and the officers (UMF Nos. 4 and 5.) It was Plaintiff's dangerous movements and the force upon Officer Williamson that prompted Officers Fallas and Ashe to utilize reasonable force upon Plaintiff in an effort to control him.

(Doc. 65, CHP Motion for Summary Judgment, p. 5:15-28)

Defendants claim that they are entitled to qualified immunity because the use of force was reasonable under the circumstances.  The use of force used was no more than what was reasonably necessary in light of the resistance and combativeness of Plaintiff and conformed to their belief of what the law required.

Plaintiff has not met his burden to show that the Defendant Officers' conduct was unreasonable.  Based on the evidence presented by Defendants, all Defendant Officers are entitled to summary judgment on Plaintiff's Fourth Amendment claims.

### b.   Fourteenth Amendment: Medical Care

The Fourteenth Amendment due process clause requires government officials to secure medical care for persons injured in police custody. *Maddox v. Los Angeles,* 792 F.2d 1408, 1414-15 (9th Cir. 1986) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).  "The Court has recognized that deliberate indifference is egregious enough to state a substantive due process claim in one context, that of deliberate indifference to the medical needs to pretrial detainees..." *Sacramento v. Lewis,*

16

523 U.S. 833, 834 (1998).  Although Plaintiff Alejandro alleges a claim under the Fourteenth Amendment due process clause, if he is alleging a deliberate indifference to his medical care "the eighth amendment guarantees provide a minimum standard of care for determining ... rights as a pretrial detainee, including ... right to medical care." *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986) (citing *City of Revere*, 463 U.S. at 244).  A police officer's constitutional duty can be fulfilled "by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital." *Maddox*, 792 F.2d at 1415 (citing *Revere*, 463 U.S. at 245); *see also Penilla v. City of Huntington Park*, 115 F.3d 707 (9th Cir. 1997).

The standard used to determine whether denial of medical care to a detainee rises to a constitutional level is that of deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  Plaintiff must provide evidence that Defendant Officers exhibited deliberate indifference to his serious medical needs. *Jones*, 781 F.2d at 771.  Plaintiff must provide evidence that the Officers actually knew of and disregarded a substantial risk of serious harm to his health and safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (defining deliberate indifference).  "A determination of 'deliberate indifference' involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith,* 974 F.2d 1050, 1060 (9th Cir. 1992) *overruled on other grounds*.

Deliberate indifference involves an official knowing of and disregarding an excessive risk to inmate health or safety; "the

17

official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; see *Bryan County v. Brown*, 520 U.S. 397, 410 (1997).  It is unclear whether Plaintiff Alejandro is bringing a Fourteenth Amendment, deliberate indifference to medical care claim. Plaintiff Alejandro states in his Complaint the following:

> All Defendants made no attempt to ascertain the amount of force used in which the need to summon immediate medical aid was necessary to stablize the plaintiff for immediate transportation to Kern Medical Center, Emergency Room.

(Doc. 40, Complaint, p. 4:11-14)[2]  Defendants have not addressed

---

[2] Plaintiff's Complaint also alleges the following:

> "I Mauro Alejandro III Feel that my Life, Liberty and Civil Rights was violated, Fourth Amendment and Fourteenth Amendment Due Process clause violated by All Officers stated herein Complaint.  Due process guarantees An Arrest without Assault and Battery, Excessive Force in Making Arrest, The due course of Justice without the intent to deny any citizen the equal protection of Laws..."

(Doc. 40, Complaint, p.6:16-21) This does not appear to state a claim for a Fourteenth Amendment denial of equal protection of the laws claim because there is no allegation that Defendants intended or with the purposes discriminated against Plaintiff on the basis of a membership in a protected class.  A claim for equal protection under § 1983 requires Plaintiff to show that Defendants, under color of law, "acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class," in violation of Plaintiff's right to equal protection of the laws under the Fourteenth Amendment. *Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998)(*citing Washington v. Davis*, 426 U.S. 229, 239-40 (1976)).

such a claim in their motions for summary judgment.  Plaintiff
has provided no evidence if he wanted to bring such a claim.
There are no facts to support such a claim.  Plaintiff has not
met his burden on summary judgment to show that the Defendant
Officers' conduct was in violation of his Fourteenth Amendment
rights.

In addition, an excessive force claim is asserted under the
Fourteenth Amendment.  "Today we make explicit what was implicit
in Garner's analysis, and hold that all claims that law
enforcement officers have used excessive force-deadly or not-in
the course of an arrest, investigatory stop, or other 'seizure'
of a free citizen should be analyzed under the Fourth Amendment
and its 'reasonableness' standard, rather than under a
'substantive due process' approach."  *Graham v. Connor*, 490 U.S.
386, 396 (1989).  Therefore, any claim for excessive force under
the Fourteenth Amendment should be dismissed.

All Defendant Officers are entitled to summary judgment on
Plaintiff's Fourteenth Amendment claims.

II.  Assault and Battery

"Assault and battery are defined in the California Penal
Code.  Assault is the 'unlawful attempt, coupled with a present
ability, to commit a violent injury on the person of another.'
Cal.Penal Code § 240. 'A battery is any willful and unlawful use
of force or violence upon the person of another.' Cal. Penal Code
§ 242." *Tekle ex rel. Tekle v. U.S.*, 457 F.3d 1088, 1102 (9th
Cir. 2006.).

a.  Assault

Under California law, a claim for assault must allege: (1)

19

that Defendants intended to cause harmful or offensive contact, or the imminent apprehension of such contact, and (2) that Plaintiff was put in imminent apprehension of such contact." *Brooks v. United States*, 29 F.Supp.2d 613, 617 (N.D. Cal. 1998) (citing Restatement (Second) of Torts § 21 (1965)).  "The tort of assault is complete when the anticipation of harm occurs." *Kisesky v. Carpenters' Trust for So. California*, 144 Cal.App.3d 222, 232, 192 Cal.Rptr. 492 (1983).  Physical injury need not be present for either a claim of assault or battery. *Id.*  "A civil action for assault is based upon an invasion of the right of a person to live without being in fear of personal harm." *Lowry v. Standard Oil Co.*, 63 Cal.App.2d 1, 7, 146 P.2d 57 (1944). Specific intent to commit an assault is not required, only an intentional act coupled with the knowledge of "actual knowledge of the facts sufficient to establish that the defendant's act by its nature will probably and directly result in injury to another." *People v. Williams*, 26 Cal.4th 779, 782, 111 Cal.Rptr.2d 114 (2001), *rehearing denied, on remand* 2002 WL 127372.

### b. Battery

Under California law, the elements of a battery claim are as follows: (1) defendant intentionally did an act that resulted in harmful or offensive contact with the plaintiff's person, (2) plaintiff did not consent to the contact, and (3) the contact caused injury, damage, loss or harm to the plaintiff. *Tekle ex rel. Tekle v. U.S.,* 457 F.3d 1088, 1102 (9th Cir. 2006) (citing *Cole v. Doe 1 thru 2 Officers of Emeryville Police Dep't*, 387 F.Supp.2d 1084, 1101 (N.D. Cal. 2005)).

20

"A battery involves a touching." *Price v. County of San Diego*, 990 F.Supp. 1230, 1244 (S.D. Cal. 1998)(citing Restatement (Second) of Torts § 18 (1965)).  "A battery is any intentional, unlawful and harmful contact by one person with the person of another..." *Piedra v. Dugan*, 21 Cal.Rptr.3d 36, 48 (2004)(*citing Fluharty v. Fluharty*, 69 Cal.Rptr.2d 244 (1997)).  In a battery claim against a police officer, Plaintiff must prove the officer used unreasonable force. *Munoz v. City of Union City*, 16 Cal.Rptr.3d 521 (2004), *opinion modified on denial of reh'g, Munoz v. City of Union City*, 2004 WL 1834273 (2004); *Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1272-73, 74 Cal.Rptr.2d 614 (1998).  A defendant cannot be convicted of both assault and battery as every battery includes an element of assault, "and is, in fact, a consummated assault." *People v. Lopez*, 47 Cal.App.3d 8, 15, 120 Cal.Rptr. 562 (1975).

Plaintiff must prove either a claim for assault and battery against each officer.  Defendants allege that their conduct was reasonable in light of the force used by Plaintiff and the actions of Plaintiff, which placed Plaintiff and the Defendant Officers in a dangerous situation.  Defendant Williamson and Stringer claim they did not possess the requisite intent to harm Plaintiff.  They sought only to subdue Plaintiff for purposes of making an arrest.  Plaintiff had fled from the officers by vehicle and by foot.  While being arrested, Plaintiff resisted arrest by punching, kicking and thrashing about.

Defendants contend that a police officer under Cal. Penal Code § 835(a) is not required to cease with the use of force simply because the arrestee is resisting arrest.  "A police

21

officer in California may use reasonable force to make an arrest, prevent escape or overcome resistance, and need not desist in the face of resistance." Cal.Pen.Code § 835a.  Plaintiff has not met his burden to show that the Defendant Officers' conduct was unreasonable.  Plaintiff has offered no evidence to support his claim.  Based on the evidence submitted, all Defendant Officers are entitled to summary judgment on Plaintiff's assault and battery claims.

**III. Abuse of Process**

The common law tort of abuse of process arises when one uses the court's process for a purpose other than that for which the process was designed. *Rusheen v. Cohen*, 37 Cal.4th 1048, 1057, 128 P.3d 713 (2006)(citing 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 459, p. 547).  The tort of abuse of process is "interpreted broadly to encompass the entire range of 'procedures' incident to litigation." *Barquis v. Merchants Collection Assn.*, 7 Cal.3d 94, 104 fn. 4, 101 Cal.Rptr. 745 (1972).  The elements are: (1) defendant contemplated an ulterior motive in using the process, and (2) defendant committed a willful act in the use of the process not proper in the regular conduct of the proceedings. *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*, 42 Cal.3d 1157, 1168, 232 Cal.Rptr. 567 (1986).  "A showing of malice, whether express or implied, is required." *Slaughter v. Legal Process & Courier Service*, 162 Cal.App.3d 1236, 1247, 209 Cal.Rptr. 189 (1984).  "Abuse of process claims merely require malice, which 'may be inferred from the wilful abuse of the process.'" *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, 24 Cal.4th 800,

22

824, 102 Cal.Rptr.2d 562 (2001) (quoting *Tranchina v. Arcinas,* 78 Cal.App.2d 522, 526 (1947)).  The ulterior motive element can be inferred from proof of a willful improper act, *Drum v. Bleau, Fox & Associates*, 107 Cal.App.4th 1009, 1020, 132 Cal.Rptr.2d 602 (2003), the critical question therefore is whether Plaintiff has established a willful act in the use of process not proper in the regular conduct of the proceedings.

"Abuse of process differs from malicious prosecution (and malicious use of process) in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish." Prosser, Law of Torts 856 (4th ed. 1971) (footnotes omitted).

> The essence of the tort 'abuse of process' lies in the misuse of the power of the court; it is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice...

*Brown v. Kennard*, 94 Cal.App.4th 40, 44, 113 Cal.Rptr.2d 891 (2001).

Defendants argue that Plaintiff cannot satisfy the elements of an abuse of process claim.  First, as to the ulterior motive element, Plaintiff has not plead nor provided evidence of an ulterior motive by any Defendant.  None of the Defendants met Plaintiff prior to the incident.  Second, as to the willful act in the use of the process that is not proper in the regular conduct of the proceedings element, Plaintiff offers no evidence that any Defendant ever did anything that was not authorized by the process.  Defendants allege they had probable cause to arrest

Plaintiff, they prepared the police report, they do not have discretion on the criminal charges filed against Plaintiff and Plaintiff entered into a plea agreement and never went to trial.

Plaintiff's Complaint alleges:

> Defendant Williamson #876 Submitted a Report Of the Incident designed and drafted to cover up Any Questionable Actions taken against And/OR in the Arrest of the Plaintiff; To mask the Intended Harm and Misconduct of All Defendants herein Complaint..."

(Doc. 40, Complaint, p.4:20-23)  The preparation of a police report does not involve the process of any court.  There is no evidence to support an abuse of process claim.  The motion of all Defendants is GRANTED as to Plaintiff's abuse of process claim.

IV.   Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress under state law, a plaintiff must allege: 1) extreme and outrageous conduct by the defendant, with the intent or reckless disregard of the probability of causing emotional distress; 2) plaintiff suffered severe emotional distress; and 3) defendant was the cause of the emotional distress. *Cervantez v. J. C. Penney Co.*, 24 Cal.3d 579, 593, 156 Cal.Rptr. 198 (1979), superseded on other grounds in *Melendez v. City of Los Angeles*, 73 Cal.Rptr.2d 469, 73 Cal.Rptr.2d 469 (1998).

Defendants argue that Plaintiff has not offered any evidence that Defendants' conduct was outrageous.  Plaintiff has offered no evidence that he suffered severe emotional distress as a result of this incident.  Further, Plaintiff was resisting arrest and using force in doing so, Defendants had no option but to use minimal force to gain control of Plaintiff and the use of this force was reasonable and necessary.  The Complaint alleges no

facts to support a cause of action for intentional infliction of emotional distress nor has Plaintiff provided any evidence.   The motion of all Defendants is GRANTED as to Plaintiff's intentional infliction of emotional distress claim.

   **V.   Fraud and Deceit.**

   There is no separate cause of action for fraud or deceit under California law.   Under Civil Code § 1709 there is a cause of action for "fraudulent deceit." Fraudulent deceit involves one who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers. Cal. Civ. Code § 1709.   "California courts have consistently used the words fraud and deceit interchangeably." *Sixta v. Ochsner*, 187 Cal.App.2d 485, 490, 9 Cal.Rptr. 617 (1960).

   Any claims for fraud require Plaintiff to prove "'(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' [Citations.]" *Lazar v. Superior Court*, 12 Cal.4th 631, 645, 909 P.2d 981 (1996).   "In California, fraud must be pled specifically; general and conclusory allegations do not suffice." *Id.* at 989 (necessitates pleading facts which show how, when, where, to whom, and by what means the representations were tendered.)

   Under a fraudulent deceit claim, there are four kinds of "deceit" set forth in California Civil Code § 1710.   First, intentional misrepresentation is the suggestion, as a fact, of that which is not true, by one who does not believe it to be

true. Cal. Civ. Code § 1710(1).  Second, negligent misrepresentation is the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true. Cal. Civ. Code § 1710(2).  Third, concealment occurs where there is a suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of fact. Cal. Civ. Code § 1710 (3).  Fourth, a false promise is made without any intention of performing it. Cal. Civ. Code § 1710(4).

Plaintiff's Complaint alleges the following:

> Defendant Williamson #876 Submitted a Report Of the Incident designed and drafted to cover up Any Questionable Actions taken against And/OR in the Arrest of the Plaintiff; To mask the Intended Harm and Misconduct of All Defendants herein Complaint..."

(Doc. 40, Complaint, p.4:20-23)   This allegation is of a false police report, but it too conclusory to know what the alleged false statements are.  Plaintiff has not provided any evidence to provide any indication of what this claim entails.  It need not be further addressed.

Defendants argue that Plaintiff offers no evidence of any misrepresentation or scienter let alone any facts to support such a claim.  Plaintiff cannot demonstrate or offer evidence of intent to defraud or justifiable reliance of the misrepresentation by any individual.  Plaintiff's cause of action of fraud and deceit should be dismissed.  The motion of all Defendants is GRANTED as to Plaintiff's fraud and deceit claim.

VI.  Bad Faith

A claim for bad faith arises in contract law and is specifically applicable to insurance policies.  Defendants argue

26

the same.   A "bad faith" claim arises when there is an
unreasonable withholding of benefits due under the policy by the
carrier "measured against its duty arising under the implied
covenant of good faith and fair dealing present in every
insurance contract." *Blake v. Aetna Life Ins. Co.*, 99 Cal.App.3d
901, 918, 160 Cal.Rptr. 528 (1978).

Defendants argue that Plaintiff's allegation of bad faith is
legally unsound based on the incident that gives rise to this
lawsuit, therefore they request that the Court grant Defendants'
motion for summary judgment on this claim.   There is no such
claim for the alleged police misconduct, the motion for summary
judgment is GRANTED for all Defendants on this claim.

VII. Misconduct

There is no separate cause of action for misconduct.
Plaintiff may pursue legal action when police misconduct
constitutes an intentional tort or violates constitutional
rights.   Here, Plaintiff has alleged causes of action to cover
the alleged police misconduct, including Fourth Amendment
excessive force claims and state law assault and battery claims.
Summary judgment on Plaintiff's cause of action for misconduct is
GRANTED as to all Defendants.

VIII.      Excessive Force (State Law)

Under California law, there is no separate cause of action
of excessive force.   Any allegation of excessive force by the
officers, will be used in determining the viability of
Plaintiff's claim for battery, a cause of action under California
law.   "In order to prevail on a claim of battery against a police
officer, the plaintiff bears the burden of proving the officer

27

used unreasonable force." *Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1102, 16 Cal.Rptr.3d 521 (2004).  "Claims that police officers used excessive force in the course of an arrest, investigatory stop or other 'seizure' of a free citizen are analyzed under the reasonableness standard of the Fourth Amendment to the United States Constitution." *Id.*, *citing Graham v. Connor,* 490 U.S. 386, 395 (1989).  Defendants argue the same. The motion of all Defendants is GRANTED as to Plaintiff's misconduct claim.

<u>CONCLUSION</u>

Plaintiff has failed to file an opposition to the two motions for summary judgment.  Plaintiff has been given the notice required by law of the necessity to file an opposition. Plaintiff has been provided clear instruction on the requirements to a summary judgment motion, as provided in the Second Informational Order and Summary Judgment Notice.  Plaintiff has not contacted the Court to request an extension of time to respond to the motions.  Plaintiff has made three requests for an appointed counsel and the Court has clearly provided its order on this issue.  Plaintiff has failed to appear at oral argument.

For all the reasons stated above,

Defendants Bakersfield Police Officers Jason Williams' and Aaron Stringer's motion for summary judgment is GRANTED.

Defendants California Highway Patrol Officers Matt Ashe's and Dan Fallas' motion for summary judgment is GRANTED.

IT IS SO ORDERED.

Dated:   <u>April 30, 2008</u>            <u>    /s/ Oliver W. Wanger    </u>

UNITED STATES DISTRICT JUDGE